**SUN BANK, N.A., Plaintiff–Appellee,**

v.

**E.F. HUTTON & COMPANY, INC., n/k/a Shearson Lehman Hutton, Inc., Richard Bunstein, Defendants–Appellants.**

No. 89–3718.

United States Court of Appeals, Eleventh Circuit.

March 15, 1991.

John H. Pelzer, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, Fla., for E.F. Hutton.

Keith C. Long, Augustus F. Wagner, Jr., Nutter, McClennan & Fish, Hyannis, Mass., for Bunstein.

Joseph E. Foster, Margaret W. Hull, Akerman, Senterfitt & Eidson, Orlando, Fla., for Sun Bank.

Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

COX, Circuit Judge:

This case is an appeal by E.F. Hutton and one of its employees, Richard Bunstein, of the district court's decision, following a bench trial, that they are liable for fraudulent representations made to Sun Bank relative to the creditworthiness of one of Hutton's clients, Gary Stevens. The trial court found that Bunstein intentionally misrepresented to Sun Bank the size and nature of Stevens's Hutton accounts, and that Sun Bank had relied on those representations in lending Stevens's company almost $700,000. We hold that the district court lacked personal jurisdiction over Bunstein. We find no error in the trial court's decision concerning Hutton.

## I. *Facts*

Bunstein was a vice president of sales at Hutton. He was based in Massachusetts, and Stevens was one of his customers. Stevens organized American Machine Technologies, Inc. ("AMTI"), whose objective was to procure and complete Navy contracts. AMTI set up shop in Florida.

To obtain the working capital necessary to acquire a Navy contract, Stevens approached Sun Bank. After receiving from them three smaller, unsecured loans for AMTI, Stevens submitted a personal financial statement and applied for a $100,000 line of credit. Although several items on the financial statement arguably were questionable, Sun Bank did not pursue them and provided Stevens credit. Stevens eventually got the Navy contract, and over the next eleven months Sun Bank lent AMTI, in at least nine transactions, over a million dollars more. Stevens personally guaranteed all the loans. In making those loans, Sun Bank apparently disregarded several of its internal lending procedures.

Sun Bank did, however, take several steps to assure itself that Stevens was creditworthy and to protect its interest. AMTI assigned to Sun Bank the right to contract payments from the Navy and Stevens signed a pledge not to encumber or deplete the securities listed on his personal financial statement, the value of which Sun Bank estimated at more than $700,000. In addition, Sun Bank took a security interest in the furniture and equipment purchased with the proceeds of one of the smaller loans made to AMTI. Finally, the loan officer handling Stevens's business, Charles Bantis, called a number of references that Stevens suggested could attest to his financial well-being.

One of the persons Bantis called was Bunstein, who Stevens said was the manager of the securities listed on his personal financial statement. In two telephone conversations (eight months apart) Bunstein told Bantis that Stevens's Hutton accounts averaged near one million dollars, that the accounts were in Stevens's name, and that Stevens owned the securities outright and was not subject to a margin call. The trial court found that Bunstein knew that the statements he made to Bantis were false.

Despite Sun Bank's precautions, AMTI defaulted on its loans. Sun Bank obtained a judgment against Stevens and attempted to satisfy the judgment with the securities in Stevens's Hutton accounts. When it did, it learned that, despite Bunstein's assurances, Stevens's accounts were actually corporate, not personal accounts, and that the total value of the stocks in all accounts controlled by Stevens never exceeded approximately $30,000.

Sun Bank sued both Bunstein and Hutton, alleging that it relied upon Bunstein's fraudulent representations in lending Stevens more than $670,000. After a bench trial, the district court found for Sun Bank and awarded it more than $735,000 in damages. Bunstein and Hutton appeal, contending, among other things, that the district court lacked jurisdiction over Bunstein, erred in refusing to allow them to amend their answers on the morning of trial to include a defense based on the Massachusetts Statute of Frauds, erred by finding that Bunstein was acting as Hutton's agent when he made the representations in question, and erred in finding that

Sun Bank reasonably relied on Bunstein's representations.

## II. *Personal Jurisdiction*

■ The district court denied Bunstein's Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. We analyze questions of personal jurisdiction in diversity cases by first determining whether a defendant can properly be served with process under the applicable state long-arm statute, and then inquiring if such service comports with constitutional principles of due process. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer,* 877 F.2d 912, 919 (11th Cir. 1989).

Sun Bank argues that Bunstein is subject to jurisdiction in Florida under two provisions of the Florida long-arm statute, sections 48.193(1)(b) and 48.193(1)(f)(1):

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

> . . . . .

> (b) Committing a tortious act within this state.

> . . . . .

> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . .:

> 1. The defendant was engaged in solicitation or service activities within this state; . . . .

Fla.Stat.Ann. §§ 48.193(1)(b) and 48.-193(1)(f)(1) (West 1990).

■ The argument under the latter provision in the statute is easily dismissed. The Florida Supreme Court has decided that a purely economic injury of the sort alleged in this case is insufficient to confer jurisdiction over a defendant under § 48.193(1)(f). *Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.,* 511 So.2d 992 (Fla. 1987).

The question whether jurisdiction exists under § 48.193(1)(b) is more difficult. On the question where a tort occurs for purposes of § 48.193(1)(b), the Florida Supreme Court has not settled an apparent conflict between the district courts. Two district courts have held that commission of a tortious act in Florida does not require physical entry into the state; rather, the place of injury need only be in Florida. *See International Harvester Co. v. Mann,* 460 So.2d 580 (Fla. 1st Dist.Ct.App.1984); *Carida v. Holy Cross Hospital, Inc.,* 424 So.2d 849 (Fla. 4th Dist.Ct.App.1982). However, one district court has held that the occurrence of injury in Florida is insufficient to establish jurisdiction under § 48.193(1)(b), *Phillips v. Orange Co.,* 522 So.2d 64 (Fla. 2d Dist.Ct.App.1988), and another district, in a case factually similar to this one, has held that the making of fraudulent representations over the telephone from another state to a person in Florida does not constitute the commission of a tortious act in Florida. *McLean Financial Corp. v. Winslow Loudermilk Corp.,* 509 So.2d 1373 (Fla. 5th Dist.Ct.App.1987). Florida law interpreting the statute is therefore unclear.

■ However, in two cases decided shortly after the adoption of the current version of Florida's long-arm statute, this court's predecessor held that jurisdiction under § 48.193(1)(b) "was not limited to a situation where an act in Florida caused an injury in Florida but also . . . reached the situation where a foreign tortious act caused injury in Florida." *Bangor Punta Operations, Inc. v. Universal Marine Co.,* 543 F.2d 1107, 1109 (5th Cir.1976) (citing *Rebozo v. Washington Post Co.,* 515 F.2d 1208, 1212–13 (5th Cir.1975)).[1] We therefore interpret Florida law to provide for

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

jurisdiction over Bunstein pursuant to § 48.193(1)(b).

 We turn then to the question whether Florida may constitutionally exercise jurisdiction over Bunstein. Our analysis has two prongs: first, has Bunstein established sufficient minimum contacts with the forum to allow the forum constitutionally to assert jurisdiction over him? Second, would the assertion of such jurisdiction offend "traditional notions of fair play and substantial justice?" *Madara*, 916 F.2d at 1515–16 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

 The key to any constitutional inquiry into personal jurisdiction is foreseeability. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). To be subject to the jurisdiction of a foreign state, a defendant must purposefully establish sufficient minimum contacts with that state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183. The nature of the activities that can constitute such minimum contacts frequently has been explained in the language of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958): "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." According to the Court in *Burger King*, "[t]his 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568).

Sun Bank contends that the district court properly exercised personal jurisdiction over Bunstein on the basis of two telephone calls during which Bunstein made fraudulent representations to Sun Bank's employee, Bantis. Both parties agree that the contact between Bantis and Bunstein was initiated by Bantis, though it is unclear who placed the calls during which the misrepresentations were made—Bantis, or Bunstein, returning Bantis's calls. In either case, although Bunstein's contacts with Florida were not attenuated, they were certainly fortuitous. That the calls originated from Florida rather than from Indiana or Idaho was purely a matter of chance.

Bunstein entered into no contract or other "continuing relationship[ ] or obligation[ ]," *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950), with Sun Bank that would have made it reasonable for him to foresee being haled into court in Florida. Bunstein did not seek out Sun Bank's business, and his contacts with Bantis were likewise not a result of any other activities he initiated within the forum. Bunstein's contacts with Sun Bank occurred not because Bunstein purposefully availed himself of the privilege of conducting activities within Florida, nor even because Bunstein "purposefully directed" his activities at Florida residents, *see Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182, but because Bunstein's Massachusetts customer moved to Florida, sought a loan from a Florida bank, and told that bank to call Bunstein in Massachusetts.

Because these two telephone calls are the only contacts on which Sun Bank bases its argument for jurisdiction, were we to find that this court has jurisdiction over Bunstein we would have to do so "solely as a result of ... 'fortuitous' ... contacts." *Id.* at 474, 105 S.Ct. at 2183. We decline to do so, and conclude that Bunstein lacked sufficient minimum contacts with Florida to support the district court's exercise of personal jurisdiction over him.

However, we must go on to consider whether considerations of fair play and substantial justice counsel permitting the exercise of personal jurisdiction over Bun-

stein even though his contacts with Florida ordinarily would not permit it. *Id.* at 477, 105 S.Ct. at 2184. Relevant factors include

the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (internal quotation marks omitted).

We do not think these factors counsel a different result. While the burden on Bunstein of defending the suit in Florida may not be extreme, it is at least as great as the burden imposed on Sun Bank in prosecuting the suit in Massachusetts. Florida has no obvious special interest in adjudicating the suit. Declining to exercise jurisdiction over Bunstein would not have significantly harmed Sunbank's interest in obtaining convenient and effective relief because it could have proceeded with little inconvenience against E.F. Hutton in Florida and Bunstein in Massachusetts or both parties in Massachusetts. Nor do we believe the final two factors make this the unusual case where fundamental fairness would lessen the ordinary minimum contacts threshold, *cf. Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). We therefore hold that the district court erred in not granting Bunstein's motion to dismiss for lack of personal jurisdiction.[2]

### III. *Leave to Amend*

When the trial began, Hutton filed a motion for leave to amend its answer to add the affirmative defense of the Massachusetts Statute of Frauds.[3] Hutton sought leave to amend at that stage be-

cause it "had not previously been aware of the Massachusetts statute." Counsel for Hutton told the court that he had advised counsel for Sun Bank of Hutton's intention to seek leave to amend two days prior to trial—during the weekend. The court denied the motion, saying it "[came] too late," and when Hutton renewed the motion at the close of Sun Bank's case and at the close of all the evidence the court reserved ruling. In its written opinion following trial the court reaffirmed its decision not to allow Hutton to amend. Granting leave to amend would have also had the effect of amending the parties' pretrial stipulation, part of the court's final pretrial procedures under its Local Rule 3.06.

■ The decision whether to grant leave to amend is left to the discretion of the trial judge, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), but "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). We find no abuse of discretion in this case. The case had been pending almost nineteen months, and Hutton offered no justification for offering the amendment so late except for counsel's assertion that Hutton had only recently discovered the law.

The affirmative defense the proffered amendment would have added was completely new—there was no mention of it prior to this time. Allowing the amendment at this stage would have been prejudicial to Sun Bank. The addition of such a defense would have required at a minimum a survey of Massachusetts Statute of Frauds law and Florida's choice of law rules. In the absence of unusual circumstances, parties should not be allowed to undermine the purpose of pretrial procedures and the orderly progression of the trial by the addition of a totally new affirmative defense on the morning of trial. *See*

---

**2.** Because we have found that the district court lacked jurisdiction over Bunstein, for the remainder of the opinion we will refer to Hutton as the defendant and address only Hutton's arguments.

**3.** Massachusetts General Laws Chapter 259, § 4 provides:

No action shall be brought to charge a person upon or by reason of a representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any persons unless such representation or assurance is made in writing and signed by the parties to be charged thereby or by some person thereunto by him lawfully authorized. M.G.L. c. 259, § 4.

*Nolin v. Douglas County,* 903 F.2d 1546, 1551 (11th Cir.1990) (denying leave to amend after adoption of pretrial order); *Rhodes v. Amarillo Hosp. Dist.,* 654 F.2d 1148, 1154 (5th Cir. Unit A Sept. 1981) (denying leave to amend three weeks before trial). We find no abuse of discretion in denying leave to amend under these circumstances.

### IV. *Other Issues*

■■■■ Hutton argues that the trial court erred in finding it liable for Bunstein's misrepresentations because Sun Bank's reliance on them could not have been reasonable and because Bunstein was not acting as its agent when he made them. We have reviewed these arguments and find them to be without merit. The trial court implicitly rejected Hutton's unreasonable reliance argument. As we have recently held, "the Florida law that governs this case[ ] is that the recipient [of a fraudulent misrepresentation] may rely on the misrepresentation unless its falsity is *subjectively known* or *obvious* to him." *Chris Berg, Inc. v. Acme Mining Co.,* 893 F.2d 1235, 1238 (11th Cir. 1990) (emphasis in original). We find evidence in the record from which the trial court could have concluded that Sun Bank neither knew nor obviously should have known of the falsity of Bunstein's representations. We therefore affirm the trial court's implicit holding that Sun Bank's reliance was reasonable.

■■■■ The trial court held that Bunstein was acting as Hutton's agent when he made the misrepresentations. The existence of an agency relationship is an issue of fact, and we will not disturb a district court's resolution of that issue unless it is clearly erroneous. *See Naviera Neptuno, S.A. v. All Int'l Freight Forwarders, Inc.,* 709 F.2d 663, 665 (11th Cir.1983). A careful review of the record reveals ample evidence on which the trial judge could have based his decision. We therefore affirm the trial court's decision on the agency issue.

### V. *Conclusion*

We conclude that the trial court erred in denying Bunstein's motion to dismiss for lack of personal jurisdiction. We therefore reverse the trial court's finding of jurisdiction over Bunstein, and remand with instructions to vacate the judgment against Bunstein. We affirm the district court's judgment against Hutton.

REVERSED in part, AFFIRMED in part.