**L.O.T.I. GROUP PRODUCTIONS, a Florida corporation, Plaintiff,**

v.

**Peder C. LUND, Individually, Paladin Enterprises, Inc., a Colorado corporation d/b/a Paladin Press and Mike Connor, individually, d/b/a CEP Europe, Defendants.**

No. 94–2729–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 26, 1995.

---

**6.**  *See* FMVSS § 108 and 49 C.F.R. § 108(S)(2).

---

Ira Abrams, Abrams, Abrams & Etter, P.A., Coconut Grove, FL, for Plaintiff.

Stephen I. Peretz, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for Defendants.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS MATTER is before the Court on Defendant Mike Connor's Motion to Dismiss for Lack of Personal Jurisdiction [1] (filed February 16, 1995). In support of his motion, Defendant Connor, a nonresident, argues that he has not engaged in any activity that would bring him within the reach of the Florida Long Arm Statute, nor has he the necessary minimum contacts with this forum

---

1. On August 16, 1995, the Court denied the portion of that motion regarding subject matter jurisdiction, and reserved ruling on the issue of personal jurisdiction pending a limited evidentiary hearing.

which are required for the Court to constitutionally exercise jurisdiction.

Plaintiff, LOTI Group Productions, a Florida corporation, opposes Connor's motion to dismiss, arguing that the Court should exercise jurisdiction over Defendant Connor, individually, and doing business as "CEP Europe," on the theory that Connor/CEPE is the "alter ego" of Paladin Enterprises and also has engaged in tortious activities in Florida or which caused injury in Florida. Thus, LOTI contends Connor is subject to the Court's jurisdiction within the Florida Long Arm Statute and the Due Process Clause of the 14th Amendment.

After due consideration of the parties' motions, memoranda, and oral arguments made during the evidentiary hearing, the Court hereby grants Defendant Connor's Motion to Dismiss for Lack of Personal Jurisdiction.

## I. FACTUAL BACKGROUND

LOTI brings this action pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and also alleges state statutory and common law violations.[2] In March 1990, LOTI, an independent filmmaker that had made numerous federally copyrighted film and video productions, entered an agreement with Paladin Enterprises, Inc. ("Paladin"), a mail order seller of books and video cassettes. The essence of the agreement was that for three years, Paladin would serve as the exclusive marketer of a video film collaboration by LOTI and Paladin, in exchange for a percentage of the royalties to be paid to LOTI. Although Paladin would act as LOTI's exclusive marketer for this film for three years, and as a non-exclusive marketer for some time thereafter, it was agreed that LOTI would retain its copyright to its products at all times. Pursuant to this agreement, LOTI created and produced several films which it gave to Paladin for marketing and distribution.

In February, 1993, LOTI and Paladin revised their exclusive distribution agreement

in a document entitled "Revised Uniform Video Marketing Agreement." The new agreement essentially rescinded all prior marketing restrictions so that each of the parties was thereafter free to independently market the videos through any third parties, subject only to the proviso that the other party first be notified of the proposed third-party sub-distributor. Unchanged by the February, 1993 revision was that Paladin would manufacture all outside packaging, including the imprinting of LOTI's copyright notices, for the video cassettes that Paladin would ultimately distribute.

On December 28, 1994, LOTI filed the present four-count complaint. Underlying each count are LOTI's allegations that Paladin and/or Lund, a corporate officer of Paladin, misidentified the copyright ownership on the packaging and labeling of LOTI films. LOTI further alleges that Paladin agreed, surreptitiously and in violation of the prior exclusive distributorship agreements, to provide Connor[3] with LOTI's films and dub masters for distribution in Europe.

LOTI alleges that Connor sold, without the knowledge or authorization of LOTI, LOTI's films via mail order within Europe and the jurisdiction of this Court. LOTI further alleges that Connor has continuous and substantial contacts with Florida because he engages in an ongoing pattern of advertising and solicitation via Paladin catalogs in Florida. Finally, LOTI alleges that the availability in Florida of Connor's independently-made video and certain books written under his pseudonym "Jo Jo Gonzalez" indicate that Connor is subject to the Court's jurisdiction.

## II. PERSONAL JURISDICTION

■ "A plaintiff seeking to subject a nonresident defendant to jurisdiction of the court must do more than allege facts that show a *possibility* of jurisdiction." *Jet Charter Service Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir.1990) (emphasis added), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991). Indeed, once a defendant has relied

---

**2.** LOTI's other claims are for violation of Florida's Little FTC Act, F.S. § 501.204 *et. seq.*, common law unfair competition, and common law gross negligence.

**3.** LOTI contends that much of Connor's activity was conducted through CEP Europe, a British company which Connor manages.

on affidavits, documents, or testimony to challenge the jurisdiction of the court, "the burden is upon the plaintiff to *prove* jurisdiction by affidavits, testimony or documents." *Voorhees v. Cilcorp, Inc.,* 837 F.Supp. 395, 398 (M.D.Fla.1993) (emphasis added) (citing *Jet Charter,* 907 F.2d at 1111). Due to the conflicting nature of Connor's and Plaintiff's affidavits in this case[4], the Court held a limited evidentiary hearing to determine whether LOTI has satisfied its burden of proving jurisdiction. *See Voorhees,* 837 F.Supp. at 398 (citing *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (Fla.1989)).

■ To assert personal jurisdiction over a nonresident defendant, federal courts must engage in a two-part analysis. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990). First, the court must determine whether the Florida Long Arm Statute permits the assertion of jurisdiction. Second, the court must determine whether the Defendant has sufficient "minimum contacts" with this jurisdiction to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.*

*v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Madara,* 916 F.2d at 1514.

### (A) Florida's Long Arm Statute

■ Although Plaintiffs do not allege any particular provision under the Florida Long Arm Statute as a basis for the court's jurisdiction, their arguments indicate that they assert jurisdiction pursuant to section 48.193(1)[5]. Fla.Stat.Ann. § 48.193(1) (West 1994).

Section 48.193(1) addresses specific jurisdiction, permitting jurisdiction over defendants who engage in certain enumerated acts which give rise to the particular litigation. It provides, in pertinent part:

(1) Any person, whether or not a citizen or a resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

4. *Compare, e.g.,* Affidavit of Mike Connor at ¶ 5 ("I have never directed any advertising or solicited sales in the State of Florida which contain the purported misattribution of copyright ownership as alleged in the Complaint.") *with* Affidavit of Sheryl L. Crawford at ¶ 2 ("Mike Connor did most certainly engage in extensive solicitation activities within the State of Florida by distributing his CEP Europe catalog and sell [sic] videotapes within the State....."); *also compare* Affidavit of Connor at ¶ 2 ("I do not operate, conduct, engage in, or carry on a business venture in the State of Florida.") *with* Affidavit of Crawford at ¶ 11 ("Defendant Connor is engaged in business in the State of Florida, both personally and by proxy through Defendant Paladin Press. In addition to his marketing and promoting L.O.T.I. tapes in Florida, Defendant Connor has advertised and sold his own books to Florida residents, both under his own name and under his pseudonym 'Jo Jo Gonzalez.' ").

5. The Plaintiff's arguments also indicate that Plaintiff seeks to assert jurisdiction under Section 48.193(2) which addresses the Court's ability to exercise general jurisdiction over a nonresident defendant. Fla.Stat.Ann. § 48.193(2) (West

1994). Section 48.193(2) provides that the court may exercise jurisdiction over a defendant who is engaged in "substantial and not isolated activity within the state ... whether or not the claim arises from that activity." In *Madara,* the Eleventh Circuit determined that in an unrelated cause of action, the court would not exercise personal jurisdiction over a nonresident defendant whose "presence" within the jurisdiction was based on concerts and record sales. 916 F.2d at 1516 n. 7. The court stated that "if a defendant could be sued on an unrelated cause of action because of concerts and record sales, then he likely would be amenable to suit in all the states of the union on any cause of action. We reject without further discussion the possibility that Hall is generally present in Florida for jurisdictional purposes based on these contacts." *Id.*

Similarly, the sale of Connor's books and his own video tape by distributors and third-party publishers is not sufficient to permit the exercise of general jurisdiction on an unrelated cause of action. To permit such general jurisdiction would make Connor amenable to suit anywhere in the country on any cause of action, a result the Eleventh Circuit has clearly rejected as contrary to the purposes of general jurisdiction. *See id.*

(b) Committing a tortious act within this state.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state if, at or about the time of the injury ... (1) [t]he defendant was engaged in solicitation or service activities within this state ... or (2) [p]roducts, material, or things processed, serviced, or manufactured by the defendant anywhere were used ... within this state in the ordinary course of commerce, trade, or use.

*Id.*

In the present case, the memoranda, affidavits, and testimony presented for the purposes of determining personal jurisdiction demonstrate that Connor is not subject to personal jurisdiction under section 48.193(1). First, the evidence does not support Plaintiff's allegation that the Court has jurisdiction pursuant to 48.193(1)(a). There was no evidence that Connor operates, conducts, or engages in business in Florida or that Connor has an office or agent in the state of Florida. Plaintiff's interest in characterizing the Paladin–Connor relationship as "alter ego" or "agent-principal" is not supported by the affidavits, memoranda, or testimony. Paladin appears to have assisted Connor in creating CEP Europe. There also appears to be a continuing relationship between CEP Europe and Paladin. Connor, however, has no control whatsoever over Paladin's business decisions, contracts, or company management. Thus, Connor does not "stand in Paladin's shoes" as one who conducts or engages in business in Florida. Finally, Plaintiff's argument that Connor acts through agents who have sold his own video and books in Florida fails to establish jurisdiction on the present cause of action which does not arise out of the sale of Connor's own video or books.

■ Second, assuming, arguendo [6], that the Defendant has engaged in some form of tortious activity, for personal jurisdiction to attach under the "tortious activity" provision of the Florida Long Arm Statute, the Plaintiff must demonstrate that the nonresident defendant committed a *substantial aspect* of the alleged tort in Florida. *Cable/Home Communication Corp.*, 902 F.2d at 857 (the *cumulative* receipt of broadcasts which stimulated sales and profits for defendants constituted substantial activity in Florida) (emphasis added). Moreover, the alleged tort must cause injury in the state of Florida. *Classic Lines, Inc. v. National Coach Corp.*, 734 F.Supp. 471, 473 (S.D.Fla.1990).

In the present case, Plaintiff has not demonstrated that Connor committed the substantial portion of any tort in the state of Florida, nor that there was any injury in the state of Florida. Every aspect of the allegedly tortious conduct, other than the delivery of 3 video cassettes, took place outside this jurisdiction. In fact, even with regard to these 3 videos, the only conduct that took place within Florida was the actual delivery: the orders were received in England and payment was made in England in English currency. Such isolated contact does not rise to the level of "substantial part" of the tortious activities which LOTI alleges Connor engaged in.

Moreover, Plaintiff has failed to demonstrate that such sales within the state of Florida resulted in any injury within the state. The sales were made to LOTI-affiliated parties who were reimbursed by LOTI for their costs and the videos are currently in the possession of LOTI.[7] There was no evi-

**6.** Defendant Connor contends that Plaintiff's tort claims are barred by the Economic Loss Rule which provides that there can be no independent tort where the claimed financial injury arises out of breach of contract. For the purposes of determining personal jurisdiction, the Court will not decide the merits of whether Plaintiff's federal and common law tort claims are barred by Florida's Economic Loss Rule. The court does note, however, that there is no contract between LOTI and Connor. Moreover, Plaintiff seeks injunctive relief as well as monetary damages to address what it claims are non-economic losses such as injury to its good will and reputation.

**7.** One order was placed by Mr. Dell'au, a close friend who has loaned money to LOTI, periodically participated in the filming and on screen acting of LOTI films, and whose name frequently appears in the credits of LOTI films. According to his testimony, Mr. Dell'au placed the order using his wife's name, Joanna Elliot, for tracking purposes. The other order was placed in the name of "Louis Piselli," (who is the husband of

dence presented or alleged that indicates Connor ever sold any of LOTI's products to any other Florida or United States resident.

Finally, Plaintiff has failed to demonstrate that the Court has jurisdiction pursuant to Florida Long Arm Statute section 48.193(1)(f). Even if Plaintiff could establish that they suffered an injury within this jurisdiction, it would not have been caused by an act or omission while Connor was soliciting activities or while his products were being used within this state in the ordinary course of commerce, trade, or use. The evidence presented indicates that Connor did not engage in solicitation activities or control the advertisements Paladin placed in its catalog or the distribution of Paladin's catalog. Moreover, as stated above, there was no injury caused at any time when any products were being used within this state in the ordinary course of commerce. Two of the three videos in question were purchased by Mr. Dell'au who is closely affiliated with LOTI. Mr. Dell'au does not own or have access to any equipment that would play a PAL-format video. Moreover, upon receiving the videos, he delivered them to LOTI and was reimbursed for his costs. The other video was purchased by Louis Piselli, the husband of LOTI's CEO and President, and sent to their home address which is also the business address of LOTI Group. In short, Connor's products were never being used within this state in the ordinary course of commerce, trade, or use.

Even if the Court were to determine that Connor's two isolated shipments to LOTI-affiliated Florida residents constituted tortious activity in violation of the Florida Long Arm Statute, the court still could not exercise personal jurisdiction over Connor because the Constitutional prong of the two-part analysis cannot be satisfied under the facts of this case.

### III. DUE PROCESS

■ The Florida Supreme Court has acknowledged that "the mere proof of any one of the several circumstances enumerated in

section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts." *Cable/Home Communication Corp.*, 902 F.2d at 857. To exercise personal jurisdiction over a nonresident defendant in conformity with the due process requirements of the federal constitution, the Court must determine that the defendant has established minimum contacts with the forum state such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

■ Determining minimum contacts requires an examination of the "quality and nature" of the nonresident defendant's activity. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1948); *Cable/Home Communication Corp.*, 902 F.2d at 858. The key to any constitutional inquiry into personal jurisdiction is foreseeability. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir.1991). The due process clause requires that a Defendant have "fair warning" that a particular activity may subject him to the jurisdiction of the forum. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182; *Madara*, 916 F.2d at 1516. The "fair warning" requirement is satisfied when a nonresident defendant "purposefully directs" his activities to forum residents and the resulting litigation derives from the alleged injuries that "arise out of or relate to those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)); *Cable/Home Communication Corp.*, 902 F.2d at 857. To comport with due process foreseeability, the Court must determine that the Defendant "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct.

---

Sheryl Crawford, the President and CEO of LOTI), to be delivered to his Florida address

which is also the business address of LOTI.

at 1240; *Madara*, 916 F.2d at 1516–17; *Sun Bank*, 926 F.2d at 1034. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

Although in certain circumstances a *significant* single act in the forum may be sufficient to permit the Court to exercise jurisdiction [8], the Eleventh Circuit has found that a random, attenuated, or fortuitous contact initiated by a Florida plaintiff does not satisfy the minimum contacts requirement under the Fourteenth Amendment. *Sun Bank*, 926 F.2d at 1034. For example, in *Sun Bank*, the Eleventh Circuit held that several telephone calls between the Florida plaintiff and nonresident defendant in which the defendant made fraudulent representations which ultimately caused injury to the plaintiff were not sufficient to qualify as "minimum contacts." *Id.* In that case, the defendant did not seek out Florida business, did not purposefully direct his activities towards Florida or purposefully avail himself of the laws of Florida, nor were his contacts a result of any other activities the defendant initiated in Florida. *Id.* Instead, the plaintiff, seeking information regarding a potential loan, contacted the defendant who then made the fraudulent misrepresentations. *Id.* The court held that the defendant did not have "minimum contacts" with the plaintiff's forum reasoning that it was purely a matter of chance "that the calls originated from Florida rather than from Indiana or Idaho". *Id.*

 Connor's circumstances mirror the circumstances of the defendant in *Sun Bank*. Connor's only limited contact with Florida resulted solely from Mr. Dell'au and Mr. Piselli's initiating contacts with Connor by ordering videos which Connor held for sale in England. In fact, the only aspect of the sale that took place within the state was the delivery of the product. The order was taken in England and the payment was made in English currency which was sent to Connor's business in England. That the LOTI-affiliated Messrs. Dell'au and Piselli placed their orders from Florida rather than Illinois or Idaho was purely a matter of chance. *See Sun Bank*, 926 F.2d at 1034. These two sales were merely the result of fortuitous contacts of the type which are insufficient bases for the court to exercise personal jurisdiction. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Sun Bank*, 926 F.2d at 1034.

■ Determining whether "traditional notions of fair play and substantial justice" would permit the Court to exercise jurisdiction constitutes the final step in determining whether the court may exercise personal jurisdiction over a nonresident defendant. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. While this determination is based on equitable considerations and conducted separately from the minimum contacts analysis, a particularly weighty finding under one branch of the analysis can compensate for a weaker finding on the other branch. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85; *Madara*, 916 F.2d at 1517. Where the nonresident defendant, like Connor, does not have even minimum contacts with the forum, this Court finds that it would offend traditional notions of fair play and substantial justice to hale into this jurisdiction a party who could not and did not have fair warning that a particular contact, initiated by the Plaintiff, would subject him to the jurisdiction of this Court. It would not comport with traditional notions of fair play and substantial justice to exercise jurisdiction over a defendant with merely fortuitous, random contacts with this forum. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant Connor's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. Defendant Connor is hereby dismissed from the above-captioned case.

DONE AND ORDERED.

---

**8.** *Cable/Home Communication Corp.*, 902 F.2d at 858.