710 So.2d 67 (1998)
THOMAS JEFFERSON UNIVERSITY, Appellant,
v.
Lisajane ROMER and Kevin Romer as Natural Parents and Guardians of Mathew Romer, a Minor, and Lisajane Romer and Kevin Romer, individually, Paul M. Tocci, PhD, and University of Miami, etc., et al., Appellees.
No. 97-1410.
District Court of Appeal of Florida, Fourth District.
April 1, 1998.
*68 Charles M.P. George and A. Scott Lundeen of George, Hartz, Lundeen, Flagg & Fulmer, Coral Gables, for appellant.
Jane Kreusler-Walsh of Jane Kreusler Walsh, P.A., West Palm Beach, Daniel S. Pearson of Holland & Knight, P.A., Miami, and Neal A. Roth and Gary M. Cohen of Grossman & Roth, P.A., Boca Raton, for Appellees-Lisajane Romer and Kevin Romer.
PER CURIAM.
This is a non-final appeal from a trial court order denying a motion to dismiss for lack of personal jurisdiction over appellant, Thomas Jefferson University. We affirm because there is both long-arm jurisdiction pursuant to section 48.193(1)(f)2, Florida Statutes (1995) and sufficient minimum contacts to satisfy constitutional due process requirements. Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).
While we affirm, we do so on the basis of section 48.193(1)(f)2, not section 48.193(1)(f)1. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979). Our review of the record supports the conclusion that Thomas Jefferson processed or serviced the serum in Pennsylvania but that the resulting written report and analysis were used within Florida in the ordinary course of the University of Miami's practice to evaluate the risk of Tay-Sachs.
We also conclude that there were sufficient minimum contacts to satisfy constitutional due process requirements. While there is a dispute between the parties about the number of samples tested by Thomas Jefferson for the University of Miami, we find that Thomas Jefferson's activity with the State of Florida was purposeful such that it could reasonably anticipate being haled into court here. Accordingly, we affirm.
GUNTHER and POLEN, JJ., concur.
FARMER, J., concurs and dissents with opinion.
FARMER, Judge, concurring and dissenting.
The parents of a child who was born with Tay-Sachs disease sued several defendants, alleging the negligent performance and report of incorrect genetic test results. This inaccurate information allegedly led them to believe that they did not carry the Tay-Sachs gene and that there was no risk, therefore, that they would conceive a child having the disease.
The blood sample was taken by a Dr. Tocci of the University of Miami (UM) here in Florida. He then sent the sample to Thomas Jefferson University (TJU), a clinical laboratory located in Pennsylvania, for analysis and a report, which was then in turn furnished to Dr. Tocci in Florida. The parents sued UM, Dr. Tocci and TJU. In its motion to dismiss the complaint, TJU asserted that Florida lacks personal jurisdiction over it and that *69 the plaintiffs failed to provide the requisite presuit notice under chapter 766. The trial court denied the motions, finding personal jurisdiction over TJU and also that the presuit notice was not required. This appeal concerns only personal jurisdiction.
Plaintiffs argued that Florida has personal jurisdiction over TJU by virtue of two separate provisions of the Florida long arm statute: subdivision (1)(b), dealing with the commission of a tortious act in Florida; and subdivision (1)(f), dealing with negligent acts or omissions outside the state of Florida that ultimately cause injury to someone within the state.[1] The trial court expressly found jurisdiction under both (1)(b) and (f)(1). In affirming this decision, the majority applies Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979) (even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if an alternative theory supports it), and concludes that Florida has jurisdiction over TJU only under (f)(2). In other words, the majority has concluded that plaintiffs have failed to establish jurisdiction under (1)(b) and (f)(1). I agree with the majority as to the lack of jurisdiction under subsections (1)(b) and (f)(1), but I disagree as to the assertion of jurisdiction under (f)(2).
The critical facts are largely undisputed. Dr. Tocci was the director of biogenetics at UM. He took blood specimens from the mother for diagnostic purposes. She, in turn, wrote a check to UM for this service. At the time of her blood sampling, UM's lab was experiencing staffing difficulties. Tocci contacted his friend and colleague at TJU, a Dr. Grebner, and requested assistance in performing serum testing on some specimens. Tocci and Grebner agreed that the assistance was not a business venture but just one colleague helping another in a crunch. There was no formal contract between TJU and UM. There were just two instances when UM's lab needed such assistance: once during July-August 1994, and then again in March 1995 after Tocci had a heart attack.
The mother's specimen was one of those sent to TJU in Pennsylvania in July 1994. During this time UM sent 10 to 30 batches of some 13 to 30 tests to TJU. Dr. Grebner estimated that approximately 150 samples were sent during this time. After analyzing the samples, TJU sent a report to UM. TJU then billed UM, not plaintiffs, for the test. According to TJU, as a courtesy to Tocci it billed $40 per test, rather than the $60 it usually charges its own patients and at that price it lost money on each test it performed for UM.
In Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), the supreme court explained that a plaintiff must leap two hurdles in order to establish that Florida has personal jurisdiction over a nonresident defendant. First, the plaintiff must demonstrate that the legislature has actually asserted jurisdiction over the nonresident defendant under an express provision of the long arm statute. Next, the plaintiff must satisfy due process requirements by showing that the defendant has sufficient or "minimum" contacts with the state of Florida, as required by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In addition to finding both (1)(b) and (f)(1) applicable, the trial court here found that TJU had sufficient contacts with Florida to be fairly *70 sued here. I shall consider first the applicability of the statutes and then the sufficiency of TJU's Florida contacts.

I. Subsection 48.193(1)(b)
Although I agree with the majority that subsection (1)(b)the commission of a tortious act in Floridadoes not provide jurisdiction in this case, I think it important to state our reasoning, especially in light of the conflicting decisions from Florida courts on the issue.
A number of Florida appellate decisions have held that (1)(b) applies to conduct outside of Florida where resulting injury occurs within this state. See Wood v. Wall, 666 So.2d 984 (Fla. 3d DCA 1996); Allerton v. State Dept. of Ins., 635 So.2d 36 (Fla. 1st DCA), rev. denied, 639 So.2d 975 (Fla.1994); Int'l Harvester Co. v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984).[2] At least two federal appellate decisions have also reached the same conclusion. See Robinson v. Giarmarco co & Bill, P.C., 74 F.3d 253 (11th Cir.1996); Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030 (11th Cir.1991). On the other hand, several other Florida courts, including this one, have held the contrary and read (1)(b) to require that the defendant's conduct or act take place within this state. See Phillips v. Orange Co., 522 So.2d 64 (Fla. 2d DCA), rev. denied, 531 So.2d 1354 (Fla.1988); McLean Financial Corp. v. Winslow Loudermilk Corp., 509 So.2d 1373 (Fla. 5th DCA 1987); Fitz v. Samuel Friedland Family Enter., 523 So.2d 1284 (Fla. 4th DCA 1988); Freedom Sav. & Loan Ass'n v. Ormandy & Assoc., Inc., 479 So.2d 316 (Fla. 5th DCA 1985); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977).[3] The courts in the decisions applying (1)(b) where none of the conduct or acts took place in Florida employ one of two rationales. On the one hand, they distinguish between intentional torts and negligence and conclude that intentional torts are covered by (1)(b) even though the act took place outside Florida. Wood v. Wall, 666 So.2d at 986; Allerton, 635 So.2d at 40; Robinson, 74 F.3d at 257.[4]
On the other hand, International Harvester concluded a tort is committed in the place where the injury, or final element, occurs and therefore the tort was committed where the conduct or act causes injury or damage. 460 So.2d at 581. In Doe v. Thompson, 620 So.2d 1004 (Fla.1993), the supreme court held that a nonresident defendant, who had not personally acted in Florida because all of his acts here were on behalf of his corporation, was not subject to (1)(b). The court disapproved International Harvester to the extent of conflict with Doe. In a footnote, the court said that "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction," and cited several out of state cases but did not mention (1)(b). 620 So.2d at 1006. Allerton nonetheless concluded that the intentional tort rationale survived Doe even though it was not an issue in Doe and was therefore not discussed in the opinion. Allerton and similar cases read too much into the actual holding in Doe.
I agree with the majority that (1)(b) should not be read to reach conduct in another state that causes injury to someone in Florida. As *71 the statutory text of (1)(b) itself indicates, jurisdiction turns on the "commission of a tortious act within this state." The statute does not distinguish between intentional torts and negligence. It simply refers to a "tortious act." To draw the distinction of intentional torts, it is necessary to add words to the statute. Judges are not free to add to statutory text, especially where the existing language suggests some uncertainty as to the precise legislative intent. In re Order on Prosecution of Criminal Appeals, 561 So.2d 1130 (Fla.1990); Devin v. City of Hollywood, 351 So.2d 1022 (Fla.App.1976). Courts lack the power to modify or extend the meaning of statutory text. Holly v. Auld, 450 So.2d 217 (Fla.1984).
Moreover, the legislature did not say "commission of a tort" in this state, but instead made jurisdiction depend on the "commission of a tortious act" here. If the legislature had used "commission of a tort," there might be some theoretical basis to separate the elements of a tortamong which is damagesand reason that the tort is committed where the last element occurs. But because the statutory locution is "commission of a tortious act," it is plain that the focus of this provision is on the act itself, not its character as a tort. In short, wherever the damage element in a given case might occur, it is the commission by the defendant of the act itselfsetting into motion the various elements that combine to make a tort that is the critical test for jurisdictional purposes. The legislature has therefore said quite clearly that for jurisdiction under (1)(b) the act or omission of the defendant must have occurred within Florida.
Moreover, the text of the statute outside of (1)(b) confirms this reading. Subdivision (1)(f) explicitly addresses the circumstance where acts committed outside of Florida ultimately cause injury within this state. If (1)(b) were also deemed to cover the circumstance where acts committed outside Florida cause injury here, then one of two possible interpretations of these two provisions must be true: (A) one of the two subdivisions is superfluous, or (B) the two subdivisions are redundant. But judges should not construe statutes to render specific provisions superfluous or redundant. Unruh v. State, 669 So.2d 242, 245 (Fla.1996) ("As a fundamental rule of statutory interpretation, courts should avoid readings that would render part of a statute meaningless."); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) ("It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." [c.o.]). We are required to assume rather that the legislature had something different in mind in each provision. Reading (1)(b) to be limited to what it so clearly sayscommitting an act in Florida that ultimately proves to be a tortis the logical reading. That would leave the entirety of subdivision (1)(f) to apply to all assertions of jurisdiction over acts outside of Florida that ultimately cause injury to someone within the state.
Under Florida law long arm statutes are to be strictly construed, and the person invoking jurisdiction under such statutes has the burden of proving facts which clearly justify the use of that method of service of process. Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367 (Fla. 4th DCA 1978); Bank of Wessington v. Winters Government Securities Corp., 361 So.2d 757 (Fla. 4th DCA 1978); Citizens State Bank v. Winters Government Securities Corp., 361 So.2d 760 (Fla. 4th DCA 1978). The court's reading of (1)(b) today is thus consistent with the policy of strict construction of statutes dealing with personal jurisdiction, including long arm statutes.
For these reasons, I agree with the majority that the trial judge erred in finding jurisdiction under (1)(b).

II. Subsection 48.193(1)(f)(2)
If jurisdiction exists under subdivision (1)(f), it must necessarily be found under (f)(2).[5] That means that there must be some *72 evidence in this record that products or materials made, serviced or processed by TJU are used or consumed in the ordinary course of business in Florida. The question is thus whether laboratory analysis of blood samples by itself constitutes processing or servicing of products or materials or things, as (f)(2) requires.
The text of (f)(2) plainly refers to physical objects, i.e., tangible property or goods, which are then processed, or serviced. The statute manifestly does not refer to professional services, like those of a physician, attorney, architect or accountant, that may be performed outside Florida. One might be tempted therefore to read (f)(2) narrowly to apply only to industries that manufacture, process or service tangible goods. That of course would be a strict construction, but it would be unfaithful to the whole text and structure of this provision. I agree with the majority that there is no good reason why blood serum should not be deemed physical or tangible property, or goods. There is certainly a market for human blood serum in other contexts, and it can be processed[6] or serviced.[7]
Therefore, giving the text of (f)(2) its ordinary meaning, and without resort to the principles of statutory construction, I agree with the majority that (f)(2) unambiguously reaches the blood sampling involved in this case. Biogenetic testing and analysis of human blood constitutes the processing or servicing of goods or tangible property of the kind encompassed by (f)(2), and therefore this subdivision does purport to exercise jurisdiction over TJU. I therefore agree with the majority that (f)(2) provides the required explicit statutory expression of Florida jurisdiction over this non resident defendant. I therefore proceed to consider whether TJU has sufficient contacts with Florida for due process purposes.

III. Due Process and Minimum Contacts
In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court held that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of persons in not being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations.
"Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
326 U.S. at 316, 66 S.Ct. at 158; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).[8] The Court later made clear that mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of sufficient contacts with a forum state; it is essential in each case that there be some act by which defendant purposefully availed itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In short, the Due Process Clause requires that a party have fair warning that a particular activity may subject the party to the jurisdiction of a foreign state. Shaffer v. *73 Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[9]
It is critical to due process that the defendant's conduct and connection with the forum state be such that he should reasonably anticipate "being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts. 444 U.S. at 299, 100 S.Ct. at 568.[10] As the Court has also held, a single contractual relationship with an out-of-state party cannot alone automatically establish sufficient minimum contacts in the other party's forum; prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether a defendant has purposefully established minimum contacts within the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
The Court's Burger King decision is especially instructive in analyzing minimum contacts for due process purposes. The focus there was on the nature and extent of contacts with the forum to ascertain whether Rudzewicz had purposefully availed himself of the privilege of carrying on activities in Florida.[11] The primary principle in focus in Burger King was that due process requires that the defendant have purposefully directed its efforts to persons in the forum in order to be amendable to process there. In this case, therefore, it is not enough that TJU may have some contacts with UM; instead, the record must establish that TJU purposefully sought to have contacts in Florida and that they are substantial enough to warrant the assertion of jurisdiction over it.
An analysis of the record facts establishes rather clearly to me that such contacts as TJU has with Florida are random, fortuitous and attenuated. To begin TJU was solicited by UM; it did not solicit UM to do its biogenetic serum blood testing. Thus TJU did not set out to have any contact with Florida, purposeful or otherwise. UM in Florida came to TJU in Pennsylvania; TJU did not come to UM to do its serum analysis.
Second, TJU does not regularly do such testing for UM or anyone else in Florida. It was asked to do so only on two occasions: the first in July 1994 when UM was experiencing some temporary staff problems; the second in March 1995 when Dr. Tocci suffered a heart attack. In other words, the contact that TJU has had with Florida is in the past perfect, not the present progressive. The UM solicitation of TJU in Pennsylvania to do serum analyses was limited and temporary. Only 150 samples appear to be involved. The record does not show that in the field of biogenetic testing and analysis this amounts to a significant or substantial number.
There was no written contract between the parties for these restricted and transitory contacts. The entire transaction took place upon conversations between two former colleagues and was handled on an informal basis without a written agreement. There were no plans or discussion for future dealings, no suggestions for a more permanent or long term affiliation. TJU and UM did not contract for the kind of long term dealing that the parties in Burger King had done, where *74 their relationship was set for 20 years with frequent and continuing contacts in Florida.
The TJU connection was isolated and brief. It was done as a courtesy by one friend for another. There were no negotiations, no prior visits back and forth, no affiliation with a nationwide organization, or regulation of TJU's activities from Florida by UM, no agreement that the relations between the parties would be governed by Florida law, and indeed nothing to suggest that TJU sought the protection of Florida law to carry out any activity hereall of which are in sharp contrast to Burger King. The nature and extent of TJU's contacts with Florida, though admittedly more than one, are lacking the kind of substantial connection with this state present in Burger King that would make suit here reasonably predictable, or that would be in accord with basic notions of fair play.
I would quash this attempt at Florida jurisdiction over TJU and leave plaintiffs with their right to sue this defendant in Pennsylvania.
NOTES
[1] Section 48.193, Florida Statutes (1995), provides that:

"(1)Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits [that person] ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts ...
(b) Committing a tortious act within this state.
. . . . .
(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
1. The defendant was engaged in solicitation or service activities within this state; or
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." [e.s.]
For convenience I will refer to subdivision (1)(b) as "(1)(b)", to the entire subdivision (1)(f) as "(1)(f)", to subdivision (1)(f)(1) as "(f)(1)", and to subdivision (1)(f)(2) as "(f)(2)."
[2] Plaintiffs argue that Watts v. Haun, 393 So.2d 54 (Fla. 2d DCA 1981), also reads section 48.193(1)(b) to extend to torts committed outside Florida but which result in injury here. Actually Watts appears to stand for just the opposite. Judge Grimes pointed out that it was essential to the interference with the prospective gift that the defendant come to Florida and take Mr. Bryan back to New York. That trip to Florida was enough to demonstrate that the defendant "committed a substantial aspect of the alleged tort in Florida." 393 So.2d at 56.
[3] There is no conflict in the decisions of this court. Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994), does not involve tortious conduct wholly outside Florida; the publication in Florida of a defamatory falsehood is obviously the commission of a tortious act in this state. So too with Carida v. Holy Cross Hosp., 424 So.2d 849 (Fla. 4th DCA 1982) (publication of oral defamatory statements in Florida held commission of tortious act in Florida).

Moreover, Rogers & Wells v. Winston, 662 So.2d 1303 (Fla. 4th DCA 1995), rev. denied, 675 So.2d 929 (Fla.1996), and In re Estate of Vernon, 609 So.2d 128 (Fla. 4th DCA 1992), found jurisdiction based on doing business in Florida, not the commission of a tortious act here.
[4] The holding in Sun Bank is based less on the text of the statute and more on precedent from the old Fifth Circuit.
[5] A defendant is subject to suit in Florida under (f)(1) only if it is engaged in solicitation or service activities within this state at or about the time of the injury. I agree with the majority that there is no evidence to support a finding that TJU engaged in any solicitation or service activities in this state. It has no offices here, sends no agents here, and neither solicits nor conducts business here. Plaintiffs have simply failed to produce any evidence that would allow the assertion of (f)(1) jurisdiction over TJU.
[6] The American Heritage Dictionary defines the transitive verb "to process" as including the following: "to put through the steps of a prescribed procedure; to prepare, treat, or convert by subjecting to a special process." Laboratory analysis of blood serum surely fits within these meanings.
[7] The American Heritage Dictionary defines the transitive verb "to service" as "to make fit for use; adjust, repair, or maintain; to provide services to." Again, laboratory analysis of blood serum also fits these meanings.
[8] As the Court later explained, because modern transportation and communications have made it less burdensome for a party sued to defend in a foreign state where the party engages in economic activity, it usually will not be unfair to subject the party to the burdens of litigating in that forum for disputes relating to such activity. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
[9] Where a forum asserts jurisdiction over an outof-state defendant who has not consented to suit there, the fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).
[10] Even a single act can support jurisdiction, so long as it creates a "substantial connection" with the forum. McGee v. International Life Insurance Co., 355 U.S. at 223, 78 S.Ct. at 201.
[11] In Burger King the Court stated that:

"So long as a commercial actor's efforts are `purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."
471 U.S. at 476, 105 S.Ct. at 2184. The negative pregnant of that statement is that purposeful acts directed toward residents of another state will overcome the absence of physical contacts with a forum and permit the assertion of jurisdiction. But the acts must be purposefully directed toward the forum to permit jurisdiction.