**PACIFIC CORAL SHRIMP, Plaintiff,**

v.

**BRYANT FISHERIES, Defendant.**

**No. 93–2048–CIV–KING.**

United States District Court,
S.D. Florida.

Feb. 17, 1994.

Robert A. Craven, McIntosh, Sawran & Craven, P.A., Ft. Lauderdale, FL, for plaintiff.

Andrew R. Spector, Hyman & Kaplan, P.A., Miami, FL, for defendant.

### FINAL ORDER OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Defendant's Motion for Dismissal for Lack of Personal Jurisdiction or Alternatively for Transfer of Venue and Incorporated Memorandum of Law (D.E. # 2), filed October 25, 1993. After obtaining a series of extensions of time, Plaintiff filed its Response and Memorandum of Law in Opposition (D.E. # 15) on January 20, 1994. The Court then granted Defendant an extension of time in which to reply and Defendant subsequently filed its Reply on February 7, 1994.

Defendant seeks dismissal of this case pursuant to Rule 12(b)(2) on the basis that it lacks the requisite "minimum contacts" with the state of Florida to come within the state's jurisdiction. Alternatively, Defendant argues that Florida is an inconvenient forum and therefore seeks a transfer of this case to the Southern District of Alabama.

### I. BACKGROUND

Defendant is an Alabama corporation which placed an order in Alabama with a Florida seafood broker to purchase shrimp from Plaintiff, a Florida corporation. Under the purchasing agreement, Plaintiff was to supply shrimp and Defendant was to pay an agreed price for the shrimp within thirty (30) days of the invoice date. However, according to Plaintiff, since the parties had engaged in transactions prior to this sale,[1] Plaintiff granted Defendant credit based on their prior activities. Defendant thus made a promise of future payment. Upon delivery of the shrimp to an Alabama cold storage warehouse and inspection by Defendant, Defen-

dant determined that the shrimp were "nonconforming" and rejected the shipment. Thereafter, Plaintiff filed suit in the Eleventh Judicial Circuit in and for Dade County seeking recovery for account stated, breach of contract and goods sold in the amount of $99,684.50 plus costs. Defendant subsequently removed the case to this Court on diversity grounds and filed the instant motion to dismiss.

### II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ To determine the appropriateness of exercising jurisdiction over a non-resident defendant, a federal court sitting in diversity must determine (1) whether a defendant is amenable to service under the forum state's long-arm statute, and (2) whether the exercise of jurisdiction comports with the notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 n. 3 (11th Cir.1988) (citation omitted).

### A. Does jurisdiction exist under Florida's long-arm statute?

■ In this case, it is clear that Florida's long-arm statute is sufficiently broad to reach out and obtain jurisdiction over Defendant. Florida's statute provides that a person who "breaches a contract in this state by failing to perform acts required by the contract to be performed in this state" are subject to the jurisdiction of the Florida courts. Fla.Stat. § 48.193(1). Here, Defendant was required to make payment for the shrimp in Florida and Plaintiff has alleged that in rejecting the shrimp, Defendant breached the contract. Under Florida law, allegations by a plaintiff that a defendant breached a contract by not making payments in Florida, as required by contract, are sufficient to bring the defendant within Florida's long-arm jur-

---

**1.** Plaintiff's pleading alleges that since 1992 the parties have engaged in nine (9) separate trans-

actions.

isdiction. *Links Design, Inc. v. Lahr*, 731 F.Supp. 1535 (M.D.Fla.1990); *Laser Electrical Contractors, Inc. v. C.E.S. Industries, Inc.*, 573 So.2d 1081 (Fla. 4th Dist.Ct.App. 1991). Therefore, Defendant is subject to the long-arm jurisdiction of this state.

### B. Does Defendant have sufficient "minimum contacts" with Florida to satisfy the constitutional requirements of due process?

The more difficult question as to personal jurisdiction arises at step two of the analysis.

Defendant argues that it lacks sufficient minimum contacts with the state of Florida to meet the constitutional requirement for personal jurisdiction. Specifically, Defendant states that it derived no benefit from the state of Florida and engaged in no business activities in Florida. Defendant claims that the only contact it had with Florida was through the independent third party broker who arranged the deal. According to Defendant, all negotiations and performance connected with the contract took place in Alabama. Defendant thus takes the position that it was Plaintiff that was "doing business" in Alabama rather than Defendant "doing business" in Florida.

Plaintiff, on the other hand, contends that Defendant's business records establish that Defendant has been "conducting business" within the state of Florida for at least the past three years. Specifically, Plaintiff points to the figures representing Defendant's sales and purchases of goods in the state as evidence that Defendant has sufficient minimum contacts to satisfy the constitutional requirement. Apparently, in the past three years, Defendant's purchases from Florida companies totaled $733,477 and its sales to Florida companies totaled $564,246.[2]

Despite these seemingly significant figures, the Court agrees with Defendant that the facts presented are insufficient to estab-lish that Defendant has minimum contacts with the state of Florida to satisfy the due process requirements. Defendant is an Alabama corporation that entered into a purchase agreement in Alabama for a shipment of shrimp to be made to Alabama. Defendant conducts no business in Florida, owns no property in Florida, employs no employees in Florida and pays no taxes in the state. Defendant's contact stems from a purchase order made to a seafood broker who sought out the Florida corporation that acted as the supplier.

"The existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir.1990) (citing *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528) *reh'g denied, en banc*, 919 F.2d 742 (11th Cir.1990), *and cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991). The due process requirements of the Fourteenth Amendment require that the contacts be such that the defendant should reasonably anticipate being called into court there. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Thus, in deciding whether a nonresident purposefully established minimum contacts within the forum, courts must look beyond the existence of a contract to factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

In this case, the transaction giving rise to this cause of action involves a single purchase order agreement facilitated by an independent third party broker. The agreement was made for a single shipment. It was not a long-term contract that carried with it continuing obligations and future consequences.

**2.** There is some disparity among the figures offered by the parties. Apparently the discrepancy resulted from a mishap in the information provided by Defendant to Plaintiff. Rather than give Plaintiff the total dollar amounts of its sales and purchases in Florida, Defendant originally submitted information reflecting the total pounds of seafood involved in these transactions. Defendant attached an affidavit to its Reply which admits this miscommunication and reflects the appropriate figures representing the *value* of their transactions. The figures used by the Court are those revised figures.

Rather, it was a one time deal.[3] There is no evidence that the agreement was heavily negotiated. In fact, all negotiations are assumed to have taken place through the broker.

 Plaintiff points to the fact that Defendant has engaged in twenty-seven (27) separate sales agreements with Florida residents in the past three years to support its position that Defendant is "engaged in business" in the state of Florida. While it is true that the due process analysis looks at the nonresident's business relationships with the forum state, it is the quality and nature of those contacts, not the quantity, that determines their sufficiency for constitutional purposes. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). In this case, Defendant's contacts with the forum state are limited to a series of purchase and sales order agreements. Each agreement was confined to a particular sale and/or purchase. There are no allegations that these contracts created in Defendant continuing, ongoing obligations with the forum state. In fact most of these contacts, including the particular sales agreement giving rise to the instant action, were made through a broker who independently chose the Florida supplier.[4] For purposes of this jurisdictional analysis, it is significant that Defendant did not seek out Plaintiff's services. Defendant was contacted by a seafood broker who asked whether it wanted to purchase shrimp. Defendant did not choose the broker's supplier. Such attenuated contacts do not indicate that Defendant purposefully availed itself of the laws and benefits of the state of Florida.[5] *Asahi Metal*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92; and *see Jet Charter Serv., Inc.*, 907 F.2d at 1113 ("Ran-

dom, fortuitous or attenuated contacts, or contacts produced through the unilateral activity of a third person are insufficient to reasonably indicate to the defendant that he should anticipate being subject to personal jurisdiction of the forum state's courts."). The facts simply do not support the conclusion that Defendant " 'deliberately' has engaged in significant activities" within this state or has "created 'continuing obligations' between [it]self and residents of the forum" such that it could reasonably anticipate being haled into court in Florida. *Burger King*, 471 U.S. at 475–476, 105 S.Ct. at 2183–84. Therefore, the Court finds that it lacks *in personam* jurisdiction over Defendant and the case will be dismissed.

### III. MOTION TO TRANSFER FOR FORUM NON CONVENIENS

 Finding that Defendant lacks the requisite minimum contacts with the state of Florida to support personal jurisdiction, the Court need not consider whether Florida is a convenient forum. However, the Court notes that this case arises out of a sales transaction that began in Alabama and ended in Alabama. The shipment of shrimp was delivered to Alabama, inspected in Alabama and rejected in Alabama. As it is the condition of the shrimp that is in dispute in this case, it is significant that the witnesses who received and inspected the shipment are all located in Alabama. The only evidence located in Florida are the sales invoices and the shipping records. The witnesses who inspected the shrimp in Florida prior to shipping are not critical as it is the condition of the shrimp upon delivery that is at the heart of determining whether Defendant improperly rejected the shrimp and thus breached the contract agreement. Thus, even if the Court

---

**3.** The fact that Defendant subsequent to the first order but prior to receipt of the shipment made an additional order from Plaintiff does not alter the Court's analysis. Each purchase order was a short-term, one-time sales agreement that created no continuing obligations or future negotiations.

**4.** All but four sales totaling $55,645 during the past three years were arranged by brokers, and all but two of the brokered sales were handled by brokers outside Florida. (Affidavit of Sharon

Vaz, attached to Defendant's Reply Memorandum, at p. 3).

**5.** The Court finds it significant that, in a three year period, sales in Florida of only $55,645 were the result of Defendant's direct solicitation efforts. On these facts, the Court cannot find that Defendant "deliberately engaged in significant activities" within the state of Florida. *Burger King*, 471 U.S. at 475–476, 105 S.Ct. at 2183–84.

could obtain jurisdiction over Defendant, which it cannot, this case would likely be transferred to the Southern District of Alabama on forum non conveniens grounds.

## IV. CONCLUSION

For the reasons articulated herein, it is therefore

ORDERED and ADJUDGED that Defendant's Motion to Dismiss for lack of personal jurisdiction be, and the same is hereby, GRANTED. The above-styled action is hereby DISMISSED WITH PREJUDICE to refile in the Southern District of Florida. All pending motions are hereby rendered moot and the Clerk is directed to close this case.

DONE and ORDERED.