[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/25/99
THOMAS  K. KAHN
CLERK

_____

No. 97-5760

_____

DC Docket No. 96-3052-CV-JAL

VICTOR POSNER, SECURITY
MANAGEMENT CORPORATION,

Plaintiffs-Appellants,

versus

ESSEX INSURANCE COMPANY,
LTD., SALEM CORPORATION,
SALEM GROUP, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 25, 1999)**

Before TJOFLAT and EDMONDSON, Circuit Judges, and KRAVITCH, Senior
Circuit Judge.

PER CURIAM:

Plaintiffs Victor Posner and Security Management Corporation ("SMC") appeal the district court's order dismissing with prejudice their claims against Defendants Salem Corporation ("Salem") and Essex Insurance Company ("Essex") arising out of a bonus dispute with Salem; dismissing with prejudice their claims against Salem and Essex arising out of alleged financial mismanagement;[1] and dismissing without prejudice their claims against Salem and Essex arising out of Essex's failure to pay Posner's claims on certain insurance policies issued by Essex. We conclude that the district court generally was correct that it had personal jurisdiction over Salem with respect to the claims arising out of Essex's failure to pay Posner's insurance policy claims but not with respect to Posner's allegations against Salem regarding failure to resolve the bonus dispute or SMC's claims against Salem for mismanagement of Essex. Although the district court correctly decided to dismiss the latter two sets of claims, it erred by dismissing them with, rather than without, prejudice. In addition, the district court should have dismissed the count alleging civil conspiracy against Essex for failure to state a claim upon which relief can be granted. Finally, the district court should not have dismissed the remaining claims due to international abstention but should have stayed them instead.

The complaint set out seven counts, some of which incorporated multiple claims. For clarity, we begin by setting out the correct disposition for each of the claims Plaintiffs presented:

---

[1] In its order, the district court did not discuss these claims directly. Plaintiffs contend that the district court did not rule on these claims and that we must therefore remand them for consideration by the district court. We disagree. On July 1, 1997, the district court issued its order dismissing the claims and directing the Clerk of the Court "to close this case." Plaintiffs then filed a motion for reconsideration arguing, among other things, that some claims were left unaddressed. On September 25, 1997, the district court denied that motion, and on October 15, 1997, the case was closed. We accept that the district court dismissed the entire case.

2

I. Breach of Contract against Essex on the policies: <u>stayed on international abstention</u>
II. Bad Faith Refusal to Pay against Essex on the policies: <u>stayed on international abstention</u>
III. Tortious Interference against Salem on the policies: <u>stayed on international abstention</u>
IV. Breach of Contract against Salem on the bonus: <u>dismissed on personal jurisdiction</u>
V. Breach of Fiduciary Duty against Salem:
     a. on the policies: <u>dismissed on personal jurisdiction</u>
     b. on the bonus: <u>dismissed on personal jurisdiction</u>
     c. on finances: <u>dismissed on personal jurisdiction</u>
VI. Accounting
     a. against Salem on finances: <u>dismissed on personal jurisdiction</u>
     b. against Essex on finances: <u>stayed on international abstention</u>
VII. Civil Conspiracy
     a. against Salem on the policies: <u>dismissed on personal jurisdiction</u>
     b. against Essex on the policies: <u>dismissed for failure to state a claim</u>
     c. against Salem on the bonus: <u>dismissed on personal jurisdiction</u>
     d. against Essex on the bonus: <u>dismissed for failure to state a claim</u>

All dismissals are without prejudice. We affirm in part, reverse in part, and remand to the district court.[2]

Background

Essex, a Bermuda insurance corporation, was at the time of the litigation 65% owned by Salem, a Pennsylvania corporation, and 35% owned by SMC, a privately held Maryland corporation with corporate offices in Florida. Victor Posner is the majority shareholder of SMC and a 49% owner of Salem.

The allegations here encompass three separate categories of conduct brought together for the purpose of this lawsuit. The first category involves four homeowner's insurance policies that Posner purchased from Essex in 1991 covering four separate properties in Florida. In 1992, those properties were damaged by Hurricane Andrew,

---

[2] Although our disposition of the claims in issue differs from the district court's, we neither affirm nor reverse on a ground left out by the parties in the district court. <u>See</u> <u>Powers v. United States</u>, 996 F.2d 1121, 1123 (11th Cir. 1993) ("We may affirm the district court's judgment on any ground that appears in the record . . . ."). <u>See infra</u> pp. 5-6 (describing grounds upon which district court disposed of each of the claims).

3

and Posner filed claims for recovery under the policies. At the alleged request of its parent corporation, Salem, Essex denied these claims. Essex then filed a declaratory judgment action in Bermuda seeking a ruling on the validity of the insurance policies issued to Posner.[3]

The second category of allegations involves a 1993 shareholder derivative suit brought against Salem and its directors, which resulted in a court-ordered settlement. As part of that settlement, Posner agreed to return an unspecified portion of a bonus he had received from Essex when he was an officer of the corporation. Salem eventually determined that the amount to be repaid was $155,850. Although Posner contested this figure, he contends that he sent a $150,000 check to Essex to be held in escrow pending resolution of the dispute. According to Posner, this money was not held in escrow, and neither Salem nor Essex ever made good faith efforts to resolve the dispute.

The third category of allegations arose from SMC's capital contributions to Essex in 1986 and 1993 in an amount totaling $297,500. In the following years, according to Posner, Essex's financial condition deteriorated significantly under the management of Gus Fornatoro, President of Essex and President and Chief Operating Officer of Salem. This deterioration allegedly operated to the detriment of minority shareholder SMC.

In 1996, Posner and SMC filed this lawsuit against Essex and Salem. In early 1997, Essex and Salem each moved to dismiss the complaint. Salem claimed that the district lacked personal jurisdiction over it; Essex asserted that the international abstention doctrine compelled the court to dismiss or stay the action. In the

---

[3] The district court mistakenly stated in its order that Salem was a party to the Bermuda action. At the time of oral argument, Posner apparently was attempting to make Salem a party to that suit.

4

alternative, both parties contended that Plaintiffs failed to state claims on some of the counts in the complaint.[4] On Salem's jurisdictional issue, the district court dismissed with prejudice the counts relating to the bonus dispute.[5] With respect to all remaining claims against Salem and all claims against Essex, the district court dismissed the case under the international abstention doctrine. Having disposed of the entire case on one of these two grounds, the district court declined to address Defendants' alternative assertion that Plaintiffs failed to state a claim upon which relief could be granted.

## Discussion

## I. Personal Jurisdiction

---

[4] Essex did not move for dismissal on the grounds that the Florida courts lacked personal jurisdiction over it. By omitting this defense from its motion, Essex waived any challenge it could have asserted to the court's exercise of personal jurisdiction over it. See Fed. R. Civ. P. 12(g) ("If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except [in circumstances not present in this case].""); Fed. R. Civ. P. 12(h)(1) ("A defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g) . . . .").

[5] Despite the complaint's structure, as will become apparent in the discussion below, the claims in this case are not easily compartmentalized. The district court dealt with the jurisdictional issues not by claims or counts, but in terms of what it considered to be the broad underlying conduct: (1) the tortious conduct on the insurance policy claims, (2) the insurance contract, and (3) the contract to resolve the bonus dispute. The court determined it had jurisdiction over the potentially tortious conduct by Salem and over the insurance contract claims but not over the contract to resolve the bonus dispute. See R2-32, Dist. Ct. Order at 4-7. Read literally, the summary section of the court's order states that it also dismissed two of the claims against Essex—the accounting claim and the civil conspiracy claim as it relates to the bonus dispute—for lack of personal jurisdiction over Salem. See id. at 15. In light of the order's text, the district court's general approach to the issues, and the fact that Essex waived any defense based upon lack of personal jurisdiction, see supra note 4, however, we interpret the district court's summary of its disposition of the case as a simple (and understandable) error in classifying the various counts listed in the complaint. To the extent that this interpretation is incorrect, we hold that the district court erred in dismissing these two claims against Essex for lack of personal jurisdiction over Salem; instead, the district court should have dealt with these claims as explained in the chart in the introduction to this opinion.

5

We consider the jurisdictional issue first.[6]  A federal court sitting in diversity may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment.  See Sculptchair, Inc. v. Century Arts Ltd., 94 F.3d 623, 626 (11th Cir. 1996).  A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction.  See Electro Eng'g Prods. Co. v. Lewis, 352 So. 2d 862, 864 (Fla. 1977).  The plaintiff bears the burden of proving "by affidavit the basis upon which jurisdiction may be obtained" only if the defendant challenging jurisdiction files "affidavits in support of his position."  Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). It is undisputed that Salem challenged Plaintiffs' jurisdictional allegations with an affidavit from one of its officers, David Struth ("the Struth Affidavit") (reproduced as Appendix A, infra) and that Plaintiffs did not produce any evidence to contradict the Struth Affidavit.[7]

---

[6] A court without personal jurisdiction is powerless to take further action.  See Read v. Ulmer, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss."); see also Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) (stating that court should decide a 12(b)(2) motion before a 12(b)(6) motion because "a court without [12(b)(2)] jurisdiction lacks power to dismiss a complaint for failure to state a claim").

[7] Plaintiffs claim a right to jurisdictional discovery.  Although Plaintiffs correctly cite precedent from this court, as well as from the state of Florida, in support of a qualified right to conduct jurisdictional discovery, those cases are distinguishable.  In Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729-31 (11th Cir. 1982), and Gleneagle Ship Management Co. v. Leondakos, 602 So.2d 1282, 1284 (Fla. 1992), the plaintiffs had served interrogatories or production requests or both before the motion to dismiss was ruled on:  discovery was already under way.  Here, no discovery efforts were made in the eight months between the time Plaintiffs filed the complaint and the time it was dismissed; in fact, months after the complaint was filed the court sua sponte raised the issue of both parties' failure to meet to produce a Joint Scheduling Report (including a schedule of discovery), which was met by a joint motion to extend time to meet and report.

Despite Plaintiffs' failure to rebut it, we find the Struth Affidavit of little significance to the jurisdictional question. The affidavit primarily explains Salem's corporate structure and status; summarily asserts that Salem never has done business in or directed contacts into Florida; admits certain peripheral connections with the state; and denies in a conclusory way any other actions that would bring Salem within the ambit of the Florida long-arm statute. For example, paragraph five covers three-quarters of a page and contends, by reciting the long-arm statute essentially verbatim, that the jurisdictional statute does not apply to Salem. Such statements, although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994) (deciding jurisdictional issue by drawing "facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff," but refusing to "credit conclusory allegations or draw farfetched inferences"); cf. Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc., 479 F.2d 135, 139 (5th Cir. 1973) (recognizing rule in summary judgment context that "affidavits containing mere conclusions have no probative value" (citation omitted)). The Struth Affidavit's conclusory assertions of ultimate fact are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction.

---

Plaintiffs' only allusion to jurisdictional discovery was on the first page of their memorandum in opposition to the motion to dismiss filed seven and one-half months after the complaint and more than five months after the filing of the motion to dismiss; even then, Plaintiffs failed to specify what they thought could or should be discovered. The district court, therefore, did not so much deny discovery as it dismissed the case before discovery was taken. We cannot say that the district court erred.

7

For this reason, we consider only those portions of the Struth Affidavit that set forth specific factual declarations within the affiant's personal knowledge. To the extent such statements in the Struth Affidavit do not contradict Plaintiffs' pleadings, we accept the allegations stated in the complaint as true for purposes of resolving the jurisdictional issue under the requirements of the Florida long-arm statute and the Due Process Clause. See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (holding that even when a defendant submits evidence supporting his jurisdictional position, we still "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits" (citation omitted)).

The relevant portions of the long-arm statute state:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

. . . .

(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.

. . . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193. We discuss below whether each category of Salem's alleged conduct falls within any of these provisions.

A. The Insurance Policies

Posner has alleged facts, unrebutted by Salem, that establish a prima facie case of jurisdiction over Salem under the Florida long-arm statute. The long-arm statute extends personal jurisdiction to those who "[c]ommit[] a tortious act within th[e] state." Fla. Stat. § 48.193(1)(b). Here, Posner alleged facts demonstrating that, if Salem committed tortious interference, Posner's injury occurred in Florida, because the property covered by the insurance policies was in Florida. As explained in detail in Thomas Jefferson Univ. v. Romer, 710 So. 2d 67, 70 (Fla. 4th Dist. Ct. App. 1998) (Farmer, J., concurring and dissenting), the courts are deeply divided on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects the actor to jurisdiction in Florida under subsection (1)(b). Several of the Florida district courts of appeal have concluded that (1)(b) does not extend jurisdiction to the out-of-state defendant under these circumstances. See, e.g., Texas Guaranteed Student Loan Corp. v. Ward, 696 So. 2d 930, 932 (Fla. 2d Dist. Ct. App. 1997) ("The occurrence of injury alone in Florida does not satisfy section 48.193(1)(b)"); McLean Fin. Corp. v. Winslow Loudermilk Corp., 509 So. 2d 1373, 1374 (Fla. 5th Dist. Ct. App. 1987) (no jurisdiction under (1)(b) where alleged tortious act was "making of fraudulent representations in Virginia, by telephone"); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So. 2d 130, 134 (Fla. 1st Dist. Ct. App. 1977) (no (1)(b) jurisdiction where injury occurred in Florida but alleged tortious act was servicing, outside state, of vehicle that caused injury). Other decisions of the Florida district courts of appeal, however, have reached the opposite conclusion. See, e.g., Wood v. Wall, 666 So. 2d 984, 986 (Fla. 3d Dist. Ct. App. 1996) (allegations of intentional tortious acts by

9

defendants in their states of residence calculated to cause injury in Florida sufficient to create jurisdiction under (1)(b)); Allerton v. State Dep't of Ins., 635 So. 2d 36, 40 (Fla. 1st Dist. Ct. App. 1994) (jurisdiction proper under (1)(b) where Florida plaintiff "injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him").

Throughout this longstanding conflict among the state district courts of appeal, this court consistently has applied the broader construction of subsection (1)(b). See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996) (recognizing that Florida law regarding this issue has been unclear but holding that subsection (1)(b) extends jurisdiction over defendant whom plaintiff alleged caused injury in Florida through negligent drafting and review of will that occurred out of state); Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033-34 (11th Cir. 1991) (deciding, in light of split among state district courts of appeal and state Supreme Court's failure to resolve that conflict, to continue applying old Fifth Circuit interpretation that personal jurisdiction existed under (1)(b) where defendant's tortious act outside the state caused injury in Florida); see also Bangor Punta Operations, Inc. v. Universal Marine Co., 543 F.2d 1107, 1109 (5th Cir. 1976); Rebozo v. Washington Post Co., 515 F.2d 1208, 1212-13 (5th Cir. 1975).

Of course, if the Florida Supreme Court were to reject our construction of subsection (1)(b), we would be obliged in future cases to follow that Court's interpretation of the statute. See Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998) ("[B]ecause the extent of the [state long-arm] statute is governed by state law, the federal court is required to construe it as would the state's supreme court."); Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) (noting rejection of previous finding in light of "most recent pronouncement" made in intervening decision by state

supreme court).[8]  Absent a contrary decision by that Court, however, we are bound in this case to follow this court's firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida.[9]  Posner's allegations, if true, are sufficient to support his claim that Salem intentionally interfered with his contract with Essex by preventing Essex from paying his claims under the policies covering his damaged property in Florida.  Jurisdiction exists because the Struth Affidavit fails to counter these

---

[8] We recognize that, where there is doubt about the application of state law, the appropriate solution frequently is to certify the question to the state supreme court.  See, e.g., Gossard v. Adia Servs., Inc., 120 F.3d 1229, 1231 (11th Cir. 1997).  Unlike many of the cases employing certification, however, this case does not present a situation in which "[t]here is no case law directly addressing [the] issue."  Id. at 1231.  As described in the text, extensive case law—including a long line of cases decided by this court—address the scope of subsection (1)(b).  Moreover, as Romer indicates, see 710 So. 2d at 70, the Florida Supreme Court already has denied review in some of the cases presenting this issue.  See, e.g., Allerton, 635 So. 2d 36, rev. denied, 639 So. 2d 975 (Fla. 1994); Phillips v. Orange Co., 522 So. 2d 64 (Fla. 2d Dist. Ct. App.), rev. denied, 531 So. 2d 1354 (Fla. 1988).  Under these circumstances, certification is not appropriate.

[9] The only Florida Supreme Court case arguably relevant to this inquiry is Doe v. Thompson, 620 So. 2d 1004 (Fla. 1993), in which an employee of a convenience store in Florida who was sexually assaulted while working alone sued the president of the Texas corporation that owned the store, in his individual capacity, for failing to take adequate security measures at the store.  Doe does not control this case; it found no (1)(b) jurisdiction over the president in his individual capacity on the basis of the "corporate shield" doctrine, which recognizes that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."  Id. at 1006 (internal quotation omitted); see also Robinson, 74 F.3d at 257 (interpreting Doe's holding as limited to the "corporate shield" situation).  Even if Doe were construed more broadly, however, it would not affect the present case because the allegations in Doe were of negligence, not intentional tort.  See Robinson, 74 F.3d at 257 & n.2 (recognizing Florida courts' stronger tendency to apply (1)(b) broadly in the intentional tort context than in the negligence context); Romer, 710 So. 2d at 70 (Farmer, J., concurring and dissenting) (observing same trend and noting other cases' conclusions that intentional tort rationale, which was not an issue in Doe and was not discussed in the opinion, survived that case).

11

assertions with anything more than conclusory denials of contacts with the state of Florida.

Posner also alleges jurisdiction over Salem pursuant to his claim that Essex and Salem conspired to cause him harm. At least one court in Florida has adopted the following five-part test governing personal jurisdiction over a non-resident conspirator: (1) the existence of an actionable conspiracy; (2) the defendant's membership in the conspiracy; (3) the occurrence of a substantial act or substantial effect in furtherance of the conspiracy in the forum state; (4) the defendant's actual or constructive knowledge of the act in the forum state or that the act outside the state would have an effect in the state; and (5) the conspiracy conduct's direct or foreseeable cause of the act or effect. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 708 So. 2d 599, 600 (Fla. 4th Dist. Ct. App.), rev. granted, 718 So. 2d 1233 (Fla. 1998).

Posner stumbles on the first element of this test: he does not allege an actionable conspiracy. Under Florida law, "[a]n actionable conspiracy requires an actionable underlying tort or wrong." Florida Fern Growers Ass'n v. Concerned Citizens, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993); see also Williams Elec. Co. v. Honeywell, Inc., 772 F. Supp. 1225, 1239 (N.D. Fla. 1991) ("[A]ctionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."). Posner's conspiracy claim does not specify any underlying tort that Salem and Essex, acting in concert, committed against him. Instead, his complaint merely alleges that Defendants "conspired to cause harm" to him and engaged in a "concerted effort" to deny the insurance claims and avoid resolution of the bonus dispute, neither of which is an

12

actionable tort in Florida law.[10]  Cf. Execu-Tech, 708 So. 2d at 600 (recognizing potential for jurisdiction where plaintiff alleged conspiracy to defraud, although ultimately finding no jurisdiction for lack of minimum contacts); see also Wilcox v. Stout, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) (extending jurisdiction where plaintiff alleged conspiracy to interfere with a business relationship).  Posner has not established a prima facie case of jurisdiction over Salem on his conspiracy claim.[11]

---

[10] R1-1, Compl., ¶¶ 74, 75.  Posner's reallegation in the conspiracy count of paragraphs 1-72 of the complaint, R1-1, Compl., ¶ 73, is not sufficient to allege an actionable conspiracy under Florida law.  Despite his general "incorporat[ion] . . . by reference" of the previous paragraphs, Posner fails to assert any connection between the alleged conspiracy and any of the torts described elsewhere in the complaint.

[11] Although this analysis logically would support dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we need not reach the Rule 12(b)(6) issue because of our resolution of this question under Federal Rule of Civil Procedure 12(b)(2).  See Arrowsmith, 320 F.2d at 221 (discussed supra note 6).  With respect to Essex, however, Posner's complaint is equally vague and thus fails to allege an actionable conspiracy against that defendant, as well.  As explained above, see supra note 4 and accompanying text, Essex waived the defense of personal jurisdiction, but it did challenge the conspiracy count on the ground that it failed to state a claim.  The district court did not reach Essex's Rule 12(b)(6) motion, but we may affirm the district court's dismissal on any ground found in the record, see Powers v. United States, 996 F.2d 1121, 1123-24 (11th Cir. 1993).  We therefore dismiss Posner's conspiracy claim against Essex without prejudice for failure to state a claim.  See generally Arundar v. DeKalb County Sch. Dist., 620 F.2d 493, 494-95 (5th Cir. 1980) (affirming district court's dismissal of complaint under Rule 12(b)(6) for failure to state a claim, but modifying judgment so as to make dismissal without, rather than with, prejudice, because "sanction of dismissal with prejudice" [was] "too harsh a penalty under [the] circumstances.").

Finally, the complaint also sets out a breach of fiduciary duty claim against Salem based upon the insurance policies.  SMC, rather than Posner, makes this claim, however, alleging that

> Salem . . . breached its fiduciary duty to act in the best interests of SMC by influencing Essex to deny Posner's valid insurance claims.  Salem's actions in this regard were either [sic] in the interests of SMC nor of Essex as denying Posner's valid claims exposes both companies to potential liability far in excess of the amount of those claims.

R1-1, Compl., ¶ 66.  As explained more thoroughly in Part I.C., infra, the alleged injury to SMC's business interest in Essex did not occur in Florida.  The Florida long-arm statute, therefore, does not extend jurisdiction to SMC's claims of breach of fiduciary duty against Salem.

13

## B. The Bonus Dispute

The district court correctly concluded that jurisdiction does not exist over Salem with respect to the bonus dispute under any of the theories Posner advances. First, Posner maintains that Salem breached an implicit contract in Florida by failing to negotiate the bonus dispute, bringing Salem within subsection (1)(g) of the long-arm statute, which covers defendants alleged to have "[b]reach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). This provision means that there must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute. See, e.g., Groome v. Feyh, 651 F. Supp. 249, 252 (S.D. Fla. 1986) (no (1)(g) jurisdiction where no indication that duty allegedly breached (delivery) was to be performed in Florida); Pacific Coral Shrimp v. Bryant Fisheries, 844 F. Supp. 1546, 1548-49 (S.D. Fla. 1994) (jurisdiction under (1)(g) because buyer breached promise to pay for goods in Florida); Laser Elec. Contractors v. C.E.S. Indus., Inc., 573 So. 2d 1081, 1083 (Fla. Dist. Ct. App. 1991) (jurisdiction under (1)(g) where plaintiff alleged breach of duty to pay in Florida and defendant failed to rebut that assertion).

Posner's complaint contains no assertion that his implied contract with Salem included a duty for negotiation of the bonus dispute, or repayment to him of some portion of the $150,000, to occur in Florida. Moreover, this point is perhaps the only one to which the Struth Affidavit directly and specifically responds; it states that "SALEM has not entered into any contracts with Plaintiffs in the above-styled action which require the performance of any act in the state of Florida"[12] and that "were it determined that SALEM breached a contract with Plaintiffs, that breach could only

---

[12] Struth Aff., App. A, ¶ 6.

14

have occurred in Pennsylvania and not in Florida."[13]  Posner's failure to controvert this evidence ends the matter.  See Walt Disney Co. v. Nelson, 677 So. 2d 400, 403 (Fla. Dist. Ct. App. 1996).[14]

## C.  Financial Mismanagement of Essex

In the final category of alleged misconduct, SMC contends that Salem, as the majority shareholder of Essex, breached its fiduciary duty to SMC, Essex's minority shareholder, by influencing Essex to deny Posner's valid insurance claims and by avoiding resolution of the bonus dispute, thereby exposing Essex to even greater financial liability and wasting corporate assets in its resistance to paying Posner's claims.[15]  Because breach of a fiduciary duty is a tort, jurisdiction over Salem with respect to these allegations exists, if at all, under subsection (1)(b) of the Florida long-arm statute.  See Allerton v. State Dep't of Ins., 635 So. 2d 36, 39 (Fla. Dist. Ct. App. 1994) (classifying breach of fiduciary duty as an intentional tort); see generally

---

[13] Id. ¶ 9.

[14] Posner also contends that Salem is subject to personal jurisdiction in Florida with respect to the bonus dispute under theories of breach of fiduciary duty and conspiracy.  These allegations do not establish jurisdiction over Salem.  The complaint alleges that Salem breached a fiduciary duty to SMC, not Posner.  See infra Part I.C (explaining why Salem is not subject to personal jurisdiction in Florida with respect to the breach of fiduciary duty claim).

The complaint does not contain factual allegations adequate to support jurisdiction based on conspiracy wrongfully to deprive Posner of the bonus money.  The acts that Salem and Essex allegedly undertook in furtherance of the conspiracy were "[r]epeated contact between the directors of Salem and Essex in a concerted effort . . . to avoid resolution of the disputed bonus claim" and "Salem's directing Essex . . . not to resolve the disputed bonus issue."  R1-1, Compl., ¶ 75.  These assertions, standing alone, are too general to create a prima facie case of jurisdiction based upon conspiracy.  See supra pp. 12-13 (discussing requirement that complaint allege an actionable conspiracy under Florida law to obtain personal jurisdiction over defendant with respect to conspiracy claim).  With respect to Essex, we dismiss without prejudice Posner's claim of conspiracy in failing to resolve the bonus dispute for failure to state a cause of action, for the reasons discussed in note 11, supra.

[15] R1-1, Compl., ¶¶ 62-69.

15

Resolution Trust Corp. v. Pharaon, 915 F. Supp. 351, 359 (S.D. Fla. 1996) (assessing jurisdiction over defendant with respect to claims of fraud and breach of fiduciary duty under subsection (1)(b)); In re Estate of Tyler, 543 So. 2d 1307, 1308 (Fla. Dist. Ct. App. 1989) (analyzing breach of fiduciary claim under (1)(b)).

According to precedent binding on this court, subsection (1)(b) extends long-arm jurisdiction over defendants who commit a tort that results in injury in Florida.[16] Here, however, the alleged injury was to the business concern of Essex. According to the complaint, Essex is a Bermuda corporation, with its principal place of business in either Bermuda or Pennsylvania, that is authorized under Bermuda law to issue insurance policies.[17] Plaintiffs do not make any allegations indicating that any damage to Essex's business interest would occur in Florida, a fact that distinguishes this case from Allerton and International Harvester Co. v. Mann, 460 So. 2d 580 (Fla. Dist. Ct. App. 1984), disapproved on other grounds by Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993). In Allerton, the defendant was a New Jersey financial adviser who allegedly assisted some of the officers of a Florida-based insurance corporation in looting the company's assets to the detriment of policy holders. The court concluded that the defendant was subject to jurisdiction in Florida, in part because he was alleged "to have committed the intentional tort[] of . . . breach of fiduciary duty . . . aimed at [the] Florida insurance company." Allerton, 635 So. 2d at 39. Allerton relied upon International Harvester, in which a Florida shareholder of a Delaware corporation with its principal place of business in Florida sued the foreign owner of the company's voting stock in Florida for breach of fiduciary duty. The court found jurisdiction based upon the fact that the "physical assets and . . . operation as a business" of the

---

[16] See supra Part I.A.

[17] See R1-1, Compl., ¶ 7.

corporation allegedly injured" were solely within the state of Florida." International Harvester, 460 So. 2d at 582.

As Allerton and International Harvester illustrate, even the broader construction of subsection (1)(b) adopted by this court does not permit the exercise of personal jurisdiction pursuant to an allegation of injury to the business interest of a Florida plaintiff where that interest is located entirely outside of Florida. The district court correctly dismissed SMC's claims regarding Salem's mismanagement of Essex.[18]

## D. Due Process Concerns

Having concluded that the long-arm statute creates jurisdiction over Salem with respect to Posner's insurance policy-related claims, we turn to the second part of the jurisdictional inquiry: determining whether exercising jurisdiction in these circumstances comports with due process. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 258-59 (11th Cir. 1996). Subjecting Salem to jurisdiction in Florida comports with due process so long as "minimum contacts" exist between Salem and Florida and exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." Id (internal quotation omitted).

## 1. Minimum Contacts

This circuit has adopted the following three-part test to decided whether the minimum contacts requirement is met:

> First, the contacts must be related to the plaintiff's cause of action . . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within

---

[18] See also supra notes 11 & 14 (discussing lack of jurisdiction over Salem on SMC's breach of fiduciary duty claims relating to the insurance policies and bonus dispute, respectively). In conjunction with the breach of fiduciary duty claim, SMC asserted a cause of action against Salem for an accounting "to determine the circumstances surrounding Essex's financial deterioration." R1-1, Compl., ¶ 72. As it is dependent upon the breach of fiduciary duty claim, SMC's accounting claim against Salem also must be dismissed.

17

the forum . . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)(internal quotations and punctuation omitted).  Salem had the minimum contacts with Florida required by due process to be subject to jurisdiction in Florida under Posner's tortious interference theory.  Posner alleges that he sent proof of loss forms regarding his Florida property to Essex via Salem; that Salem hired a company ("GAB") to investigate the extent of damage to Posner's Florida property; and that Salem directed Essex to deny Posner's claims under the policies.[19]  If true, these allegations—particularly the last two—show that Salem directed activity into Florida with respect to Posner's insurance claims, satisfying the minimum contacts requirements.

2.  Fair Play and Substantial Justice

Factors that this court must consider in determining whether exercising personal jurisdiction over Salem would offend notions of fair play and substantial justice include the following:  the burden on Salem of defending the suit in Florida; Florida's interest in adjudicating the suit; Posner's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies.  See, e.g., Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990).

Florida and Posner both have a strong interest in seeing this matter resolved in Florida, as the dispute involves the alleged failure to pay claims under insurance policies issued by a foreign company to cover Florida property owned by a Florida

_____

[19] See R1-1, Compl., ¶¶ 23-29.

18

resident.  See Robinson, 74 F.3d at 259 ("The State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident, concerning assets located within its borders.  The plaintiff, a Florida resident, has a great interest in the convenience of litigating in her home state.").  The burden on Salem of defending the suit in Florida is mitigated by "modern methods of transportation and communication," id., as well as by the fact that Salem has admitted more than isolated contacts with Florida:  one of its officers acknowledges that it has held meetings of its board of directors there two to three times per year since 1993; two of its directors were Florida residents at times relevant to this litigation; and it periodically has responded to business inquiries from Florida.[20]  Finally, Salem has not shown that exercising jurisdiction over it would thwart any interest of the states in furthering shared policies or using resources efficiently.  See id.[21]  We conclude that exercising jurisdiction over Salem under these circumstances does not offend traditional notions of fair play and substantial justice.  Thus, due process considerations do not alter our decision that jurisdiction exists with respect to Posner's claims against Salem related to the insurance policies.

## II.  Res Judicata

The district court erred when it dismissed claims against Salem with prejudice on jurisdictional grounds; we affirm the dismissal of those counts for which it lacked personal jurisdiction but instruct the district court to dismiss those claims without prejudice.  This holding does not preclude further litigation of these claims on the

---

[20] See Struth Aff., App. A, ¶ 11.

[21] As discussed in Part III, infra, issues of international comity do warrant staying this case in light of the action presently proceeding in the Bermuda courts.  Those concerns do not affect the due process inquiry, however.

merits, but it does preclude that litigation from occurring in Florida. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) ("A dismissal for lack of jurisdiction . . . does not preclude a subsequent action in an appropriate forum."). In other words, a dismissal due to lack of personal jurisdiction acts as res judicata for the jurisdictional issue. See North Georgia Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 432-33 (11th Cir. 1993).

Plaintiffs' contention that they wrongfully were deprived of leave to amend their complaint prior to dismissal is unpersuasive. Just as Plaintiffs never moved for a continuance to permit discovery, see supra note 7, Plaintiffs never filed a motion for leave to amend the complaint. Instead, in one of their memoranda to the district court, they wrote: "If necessary, plaintiffs respectfully request that the Court provide them with an opportunity to file an amended complaint."[22] The Federal Rules require that any "application to the court for an order shall be by motion which . . . shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b). Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly. See Kelly v. Kelly, 901 F. Supp. 1567, 1570 (M.D. Fla. 1995). Moreover, Plaintiffs did not set out new factual allegations in their memorandum that, if added to the complaint, would have been sufficient to confer jurisdiction.

In short, the district court did not err when it denied Plaintiffs leave to amend their complaint, and Plaintiffs no longer are entitled to pursue the claims dismissed for lack of personal jurisdiction in Florida courts.

### III. International Abstention

---

[22] R2-25, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 19.

The district court weighed the three factors set out in Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512 (11th Cir. 1994) for determining whether a federal court should abstain from a case subject to concurrent international jurisdiction and held that, despite the existence of jurisdiction over some of Plaintiffs' claims, those claims should be dismissed on grounds of international abstention. Plaintiffs contend that the district court erred in not following the Supreme Court's more recent case, Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 116 S. Ct. 1712 (1996), which says that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Id. at 730-31, 116 S. Ct. at 1728.[23] Otherwise, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Id. at 716, 116 S. Ct. at 1720. Although this language from Quackenbush seems to preclude any exercise of discretion such as that directed by Turner, Defendants contend that Quackenbush, a case about Burford abstention, is inapplicable in the context of international abstention. If Defendants' position is correct, Turner is still good law and applies to the case before us.

We agree with Defendants that we must apply the three-factor Turner analysis because Quackenbush does not reach the doctrine of international abstention. We reject Defendants' contention, however, that Turner counsels for dismissal; instead, we conclude that the present action should be stayed.

The question of Quackenbush's applicability to international abstention is one of first impression in this, as well as any other, circuit. Although we recognize that Quackenbush contains broad language concerning the inapplicability of abstention

_____

[23] It is undisputed that all claims over which the district court has jurisdiction are legal, not equitable.

21

doctrines where plaintiffs assert legal claims over which a court has jurisdiction, the framework of that decision leads us to conclude that the Supreme Court did not intend that holding to extend to cases raising the abstention issue in light of concurrent international jurisdiction. The Court in Quackenbush stated that it was addressing for the first time "whether the principles underlying our abstention cases would support the remand or dismissal of a common-law action for damages." Id. at 719, 116 S. Ct. at 1722. It identified these "abstention principles" as "the avoidance of needless friction with state policies;" the "rightful independence of the state governments;" the "smooth working of the federal judiciary;" and "furthering the harmonious relation between state and federal authority." Id. at 717-18, 116 S. Ct. at 1721 (quoting Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 500-01, 61 S. Ct. 643, 645 (1941)). Indeed, in discussing the various circumstances under which the abstention question has arisen, the Quackenbush Court lists only cases in which federal court action risked interfering with state proceedings or authority. See id. at 716-18, 116 S. Ct. at 1721.

Read in the proper context, therefore, the Supreme Court's admonition that courts generally must exercise their non-discretionary authority in cases over which Congress has granted them jurisdiction can apply only to those abstention doctrines addressing the unique concerns of federalism. This circuit's characterizations of Quackenbush comport with this interpretation. See McKusick v. City of Melbourne, 96 F.3d 478, 489 (11th Cir. 1996); Pompey v. Broward County, 95 F.3d 1543, 1552 n.12 (11th Cir. 1996).[24] Plaintiffs contend that no principled basis exists for

---

[24] Plaintiffs cite only one case relying on Quackenbush in the international abstention context, see Abdullah Sayid Rajab Al-Rifai & Sons W.L.L. v. McDonnell Douglas Foreign Sales Corp., 988 F. Supp. 1285, 1290 (E.D. Mo. 1997). This case is not binding upon us, and we reject its holding, which legal scholars have questioned, see infra note 25.

distinguishing between the abstention doctrines involving the relationship between state and federal governments and international abstention, which addresses the relationship between the United States and foreign governments. We reject this argument: The relationship between the federal courts and the states (grounded in federalism and the Constitution) is different from the relationship between federal courts and foreign nations (grounded in the historical notion of comity).[25]

Because Quackenbush does not affect our analysis, we apply this court's formulation of the international abstention doctrine, set out in Turner. In that case, we stayed the district court proceedings where a substantially similar case had come to judgment in a German forum. Although this case is different from Turner in that the German dispute had come to judgment—and by contrast little progress has been made here in the Bermuda action—the same principles expressed in Turner govern here: "(1) a proper level of respect for the acts of our fellow sovereign nations—a rather vague concept referred to in American jurisprudence as international comity; (2)

---

[25] The Supreme Court has explained "comity" as follows:
 "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.
Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S. Ct. 139, 143 (1895).
    Legal scholars also have recognized the inapplicability of Quackenbush to the doctrine of international abstention. See, e.g., Louise Ellen Teitz, Parallel Proceedings: Treading Carefully, 32 Int'l Law. 223, 227 (1998) ("[In applying Quackenbush in the international abstention context,] [t]he [District] court [for the Eastern District of Missouri, in Abdullah Sayid] failed to recognize that the various abstention doctrines [mentioned in Quackenbush were] developed in the context of state/federal relations, against a series of constitutional constraints and precedent defining that relationship. In contrast, parallel proceedings involving international litigation raise different issues, not the least of which is the potential for unrestrained and vexatious litigation in multiple countries.").

23

fairness to litigants; and (3) efficient use of scarce judicial resources." Turner, 25 F.3d at 1518.

The district court here properly evaluated these issues in making its decision, concluding that they weighed in favor of abstaining. With respect to the first factor, international comity, the district court found no evidence that the Bermuda court was not competent to hear the claims or would not use fair and just proceedings in deciding the case.[26] The district court also noted that the insurance "policies are governed by Bermuda law, and their underwriter, Essex, is a Bermuda corporation," in determining that "[i]nternational comity . . . weighs in favor of abstention."[27] Plaintiffs have not challenged these conclusions. As the district court recognized, the second and third Turner factors—fairness and judicial resources—also counsel in favor of abstention. With respect to fairness, the facts that Essex filed the Bermuda action nearly a year before the commencement of this case, and allowing both actions to proceed risks inconsistent judgment, outweigh any convenience that the parties might enjoy in the Florida forum. Finally, although this case and the Bermuda action are not identical, they do involve significantly common issues and parties. The district court correctly concluded, therefore, that "[s]carce judicial resources . . . would be used most efficiently if the Bermuda action were to proceed to conclusion before this Court entertained Posner's insurance policy related claims."[28]

We agree with the district court that the Turner factors weigh in favor of abstention, but our jurisprudence in this area does not dictate that we should dismiss cases with respect to which foreign jurisdictions are conducting parallel proceedings.

---

[26] See R2-32, Dist. Ct. Order at 11-12.

[27] Id. at 12.

[28] Id. at 15.

24

In fact, <u>Turner</u> resulted only in a stay rather than a dismissal, even though in that case, the foreign court already had entered judgment. <u>See</u> <u>Turner</u>, 25 F.3d at 1523. Although the district court's basic reasoning was sound, therefore, we hold that the court should have stayed the claims over which it had jurisdiction, rather than dismissing them.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.